**NOT FOR PUBLICATION**                              **CASE CLOSED**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

MICHAEL MIDDLETON,

        Plaintiff,                          Civil Action No. 06-502(SDW)

   v.

CITY OF BAYONNE, ET AL.,

        Defendants.                       **OPINION**

                                                April 28, 2008

**WIGENTON, District Judge**

      This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Mike Zajac,[1] a Motion for Summary Judgment filed by Defendants George Farley, Wayne Grapstul, James Mahoney and Joseph Spiers,[2] and a Cross Motion for Summary Judgment filed by Plaintiff Michael Middleton.[3]

      The Motions and Cross Motion for Summary Judgment are decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Motions for Summary Judgment are granted, and the Cross Motion for Summary Judgment is denied.

**I. Factual Background**

      By June 26, 2006 Opinion and Order, the Honorable Faith S. Hochberg, U.S.D.J., dismissed all of the claims asserted by Plaintiff Michael Middleton ("Plaintiff") except the 42 U.S.C. § 1983 excessive force claim and the New Jersey State law tort claim of assault. Plaintiff claims that

---

[1] This Motion corresponds to docket entry 79.

[2] This Motion corresponds to docket entry 80.

[3] This Motion corresponds to docket entry 88.

Defendant Police Officers Mike Zajac, George Farley, Wayne Grapstul, James Mahoney and Joseph Spiers (collectively, "Defendants") violated his constitutional rights when they used excessive force to arrest him on May 25, 2005.[4]  Specifically, Plaintiff claims he "was tackled, assaulted, restrained, and handcuffed by several of the above stated detectives while on the ground." (App. in Supp. of Mot. for Summ. J., Ex. A.)  He expounds that he is "still suffering from the beating of some of those detectives who arrested [him] illegally and unconstitutionally.  Their unlawful act has left [him] with limited mobility and power of [his] left hand and left shoulder, and everyday that [he] sit[s] in this dreadful facility [his] nightmares only seems [sic] to be growing worse." (App. in Supp. of Mot. for Summ. J., Ex. A.)

## II. Jurisdiction/Venue

This Court has jurisdiction over the § 1983 excessive force claim pursuant to 28 U.S.C. § 1331 and over the state assault claim pursuant to 28 U.S.C. 1367(a).  Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## III. Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary

---

[4] Plaintiff does not allege that force was used against him during transport to police departments or jail. (*See* Compl.)

material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The need of the non-movant to conduct further discovery does not preclude summary judgment unless the non-movant demonstrates how the additional discovery would preclude summary judgment. *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

Here, the material facts regarding the § 1983 excessive force claims and state assault claims are undisputed. Thus, summary judgment of these claims is appropriate.

## IV. 42 U.S.C. § 1983 Claims

Section 1983 of Title 42 of the United States Code "creates a species of tort liability"[5] and subjects to liability:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

[5] *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)).

> deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. To establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law" and that "this conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

To establish that a defendant acted under color of state law, a plaintiff must demonstrate that the defendant "exercised power 'possessed by virtue of state law and made possible only because the [defendant] is clothed with the authority of state law.'" *Barna v. City of Perth Amboy*, 42 F.3d 809, 815-16 (3d Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). A defendant is "a state actor when (1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

To establish that a defendant violated a right secured by the Constitution or laws of the United States, a plaintiff must demonstrate that the defendant deprived it of such right as charged in the complaint. *Salerno v. O'Rourke*, 555 F. Supp. 750, 757 (D.N.J. 1983). A plaintiff must "identify the exact contours of the underlying right said to have been violated." *Downey v. The Coalition Against Rape and Abuse, Inc.*, 143 F. Supp. 2d 423, 437 (D.N.J. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). "By itself, Section 1983 does not create any

rights, but provides a remedy for violations of those rights created by the Constitution or federal law." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To recover under § 1983, "the plaintiff must show that the official's conduct caused the deprivation of a federally protected right." *Walker v. Beard*, 244 Fed. Appx. 439, 441 (3d Cir. 2007) (citing *Kentucky, DBA Bureau of State Police v. Graham*, 473 U.S. 159, 166 (1985)). The "plaintiff must allege that the defendant was personally involved in the deprivation." *Walker*, 244 Fed. Appx. at 441 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Specifically, the plaintiff must establish that defendant "participated in, or had knowledge of and acquiesced in the alleged unlawful conduct." *Bieros v. Nicola*, 839 F. Supp. 332, 335 (E.D. Pa. 1993) (quoting *Orrs v. Comings*, 1993 U.S. Dist. LEXIS 14615, at *1 (E.D. Pa. 1993)). "In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which . . . does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned)." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (internal citations omitted).

Plaintiff claims that his constitutional rights were violated when Defendants used excessive force to arrest him on May 25, 2005. The Fourth Amendment to the U.S. Constitution protects against excessive use of force by a law enforcement officer.[6]

---

[6] "Use of excessive force by a law enforcement officer is considered a 'seizure' under the Fourth Amendment, which prohibits such unlawful action." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989)).

**A. Qualified Immunity**

To determine whether a claim for a constitutional violation by a law enforcement officer is viable, a court must conduct a qualified immunity analysis. The U.S. Court of Appeals for the Third Circuit provides:

> Qualified immunity protects law enforcement officers from being tried for actions taken in the course of their duties. If the immunity applies, it entitles the officer to be free of the 'burdens of litigation.' But the immunity is forfeited if an officer's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' To determine . . . whether the officers have lost their immunity, we must engage in a two step analysis. First, we must decide 'whether a constitutional right would have been violated on the facts alleged . . . .' . . . Second, if we believe that a constitutional violation did occur, we must consider whether the right was 'clearly established.' The question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' This is an objective inquiry, to be decided by the court as a matter of law.

*Doe v. Groody*, 361 F.3d 232, 237-38 (3d Cir. 2004) (internal citations omitted). As such, in order to determine whether Plaintiff's § 1983 claims against Defendants are viable, we must first determine whether Defendants violated Plaintiff's constitutional rights.

Claims of excessive force by a law enforcement officer in the course of an arrest or other "seizure" of a person are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Application of the objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

"Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F. 3d 810, 822 (3d Cir. 1997).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotations and citations omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, Defendants were reasonable in using force to arrest Plaintiff on May 25, 2005, and the amount of force they used was reasonable. Plaintiff was on the street at approximately 10:00 PM selling drugs when Defendants arrested him.[7] (Pl.'s Dep. Tr. 47:2-11, May 29, 2007.)[8] Before they could apprehend him, however, Defendants had to chase Plaintiff for about one block because he was running from arrest. (Pl.'s Dep. Tr. 46:1-11, May 29, 2007.) Defendants finally got close

---

[7] According to Defendant Spiers, police officers received a tip from an informant that at approximately 10:00 PM Plaintiff would be at a certain location to distribute cocaine. (App. in Supp. of Mot. for Summ. J., Ex. C) Defendant Spiers contends that Plaintiff appeared at that location and the police officers displayed their badges to Plaintiff and verbally identified themselves as police officers. (App. in Supp. of Mot. for Summ. J., Ex. C)

[8] (App. in Supp. of Mot. for Summ. J., Ex. K.)

enough to grab Plaintiff by his jacket, but Plaintiff continued to run. (Pl.'s Dep. Tr. 48:13-25, Tr. 50:1-24, Tr. 52:5-53:2, May 29, 2007.) Consequently, it was not unreasonable that Defendants tackled Plaintiff to stop him. In fact, it appears that tackling Plaintiff was necessary. And, because Plaintiff was running when he was tackled, predictably he hit the ground hard and was injured. Further, it was reasonable for Defendant Grapstul to restrain Plaintiff using a headlock because Plaintiff attempted to break free from his hold.[9] (Pl.'s Dep. Tr. 57:11-25, May 29, 2007.) While Plaintiff explains that he attempted to break free from the headlock so that he could breathe, a reasonable police officer could conclude that Plaintiff was continuing to attempt to evade arrest for selling drugs. Plaintiff admits that Defendant Grapstul was trying to hold him in place with a headlock. (Pl.'s Dep. Tr. 57:14-19, May 29, 2007.) Plaintiff—who could have been concealing a weapon that night—posed an immediate threat to the safety of Defendants and the community. Defendants took reasonable measures to subdue and secure Plaintiff, who was actively resisting arrest. These measures include pulling Plaintiff's hands behind his back and handcuffing him. (Pl.'s Dep. Tr. 57:1-13, May 29, 2007.) Further force may have been reasonable if Plaintiff punched and kicked Defendants as Defendant Spiers reported. (App. in Supp. of Mot. for Summ. J., Ex. C.)

Further, Plaintiff sustained injuries expected from being tackled when running from an arrest.[10] He complains of pain in his shoulder and hand, although curiously Plaintiff sought medical attention for his shoulder and hand a week to ten days after his arrest. (Pl.'s Dep. Tr. 88:15-90:4,

---

[9] Among other things, Plaintiff was charged with resisting arrest and aggravated assault. Such charges, however, were dismissed pursuant to a plea agreement. (App. in Supp. of Mot. for Summ. J., Ex. E.)

[10] As a result of his participation in Plaintiff's arrest, Defendant Grapstul was taken by ambulance to the hospital for his injuries. (App. in Supp. of Mot. for Summ. J., Ex. C.)

May 29, 2007.) While he contends that when he first got to jail he complained to an unidentified police officer that his hand hurt,[11] there is no record of such complaint and he cannot identify the police officer who received his complaint. Further belying such contention, his Inmate Screening Questionnaire does not reveal any complaints of injuries and the Hudson County Jail Medical Department personnel did not note any injuries. (App. in Supp. of Mot. for Summ. J., Ex. J.) That being said, when he did complain about his hand and shoulder, his treating physician prescribed Motrin. (Pl.'s Dep. Tr. 89:15-20, May 29, 2007.) While he complains of hand pain,[12] Plaintiff's injuries have not been substantiated by a physical examination or diagnostic test; x-rays revealed no fractures or anything wrong with Plaintiff's hand. (Pl.'s Dep. Tr. 89:15-25, May 29, 2007.) Indeed, aside from Motrin, which was prescribed once in 2005, Plaintiff has received no treatment for his hand or shoulder. (Pl.'s Dep. Tr. 92:14-24, May 29, 2007.) Plaintiff admits that he has not sustained permanent injury to his hand or shoulder. (Pl.'s Dep. Tr. 96:11-18, May 29, 2007.)

Finally, Plaintiff can identify solely Defendant Grapstul as involved in his arrest.[13] He recognized Defendant Grapstul because he arrested Plaintiff on May 11, 2005 for selling drugs. (Pl.'s Dep. Tr. 114:24-115:10, May 29, 2007.) Consequently, while he claims to have been struck maybe two or four times[14] on his hands, elbows and legs, Plaintiff cannot identify anyone who struck him. (Pl.'s Dep. Tr. 62:4-18, Tr. 113:24-115:10, May 29, 2007.) Plaintiff named Defendants, other than Defendant Grapstul, because their names appeared in the police report that he received

---

[11] (Pl.'s Dep. Tr. 90:5-11, May 29, 2007.)

[12] (Pl.'s Dep. Tr. 92:16-19, May 29, 2007.)

[13] (Pl.'s Dep. Tr. 113:24-114:23, May 29, 2007.)

[14] (Pl.'s Dep. Tr. 61:4-18, May 29, 2007.)

concerning his arrest.  (Pl.'s Dep. Tr. 114:9-23, May 29, 2007.)

For these reasons, the Court is compelled to find that Defendants did not violate Plaintiff's Fourth Amendment rights, and Plaintiff's § 1983 claims are dismissed with prejudice.

**V.  State Assault Claims**

The New Jersey Tort Claims Act (the "Act") provides, "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."  N.J. Stat. Ann. § 59:8-3 (2008).  The Act provides that "[a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action."  N.J. Stat. Ann. § 59:8-8 (2008).  A "claimant shall be forever barred from recovering against a public entity or public employee if . . . he failed to file his claim with the public entity within 90 days of accrual of his claim."  N.J. Stat. Ann. § 59:8-8 (2008).

Here, Plaintiff failed to provide the requisite notice to Defendants as required by the Act.  Thus, Plaintiff's state claims of assault are barred and, thus, dismissed with prejudice.

**VI.  Conclusion**

For the reasons stated above, Plaintiff's 42 U.S.C. § 1983 claims and New Jersey State law assault claims are dismissed with prejudice.  This case is closed.  An Order follows.

**S/Susan D. Wigenton, U.S.D.J.**

cc:  Judge Madeline Cox Arleo, U.S.M.J.